GLADNEY, Judge.
The defendant, The Employers Liability Assurance Corporation, Ltd., workmen’s *70 compensation insurer of Dewey Amyx, appeals from a judgment which awarded to Donald D. Robertson compensation during disability not to exceed four hundred weeks, at the rate of $27.87 per week and for the additional sum of $1,000 for medical expenses. This suit was originally brought by Howard R Robertson on behalf of his minor unemancipated son, Donald D. Robertson, but prior to judgment Donald D. Robertson was emancipated and by proper orders herein has been substituted as plaintiff in lieu of his father.
Appellant asserts the judgment from which appealed is in error in that plaintiff’s injury is not attributable to the accident, that plaintiff did not suffer from osteomye-litis for which he underwent an operation, and further that he has recovered from any disability occasioned by the accident. Furthermore, it is argued that the trial court did not properly compute the rate of compensation, if any be due to plaintiff.
This case stems from an automobile accident which occurred on September 16, 1953, while Donald’ D. Robertson was driving a gravel truck for Dewey Amyx, a subcontract gravel hauler for the Quality Gravel Company. The defendant does not deny that a collision between the truck driven by Robertson and another gravel truck did occur in LaSalle Parish on the date above set forth and as a result of the collision Robertson was thrown from his gravel truck. It is contended, however, it was not believed by either plaintiff or defendant at the time that plaintiff suffered any serious injury. It was testified that he complained of a bruised knee to the passenger who was with him iii the truck at the time of the collision, and that he evidenced such an injury to Mrs. Lillian Boyd, Carl Boyd and Mrs. Roy Robertson, at various times from September 16, 1953 until January 9, 1954, when, because of inflammation and soreness of his right knee he consulted Dr. David L. Trax of Alexandria, Louisiana. Dr. Trax, formerly of Jena, had been the family physician. The above named witnesses, together with plaintiff’s father and mother, corroborated the testimony of plaintiff that he had an injured knee continuously from the date of the accident until January 9th. Plaintiff also gave such a history to Drs. Trax, Kingsley, Kittrell, Banks and Carnahan, whom he had occasion to consult for the purpose of examination, either for treatment or in connection with medical evidence obtained for the trial of this suit. The history so given to these doctors consistently reflects a chain of symptoms from September 16th until he began to receive treatment of osteomyelitis.
When plaintiff reported to Dr. H. D. Trax on January 9, 1954, it was found that the lower third of the right thigh was swollen, red, inflamed and painful. Symptomatic treatments consisting of antibiotics were given and X-ray pictures were taken. Dr. Barker, a radiologist, made a report of probable osteomyelitis due to rarefaction present. When plaintiff’s leg did not respond to such treatment Dr. Trax called into consultation Dr. Daniel M. Kingsley, orthopedic surgeon, who first saw Donald Robertson on February 8, 1954. He likewise was of the opinion that there was probability of osteomyelitis. Then through the use of a radio opaque tube the doctors traced an abscess formation which tended to confirm the earlier suspicion of osteo-myelitis, and as a result of this test Drs. Trax and Kingsley decided to operate and did so on February 15, 1954.
Dr. Kingsley, who performed the operation, describes the surgical procedure in detail and states that there was positive confirmation of the osteomyelitis or infection of the bone marrow. The operation was performed at the back of the right knee. The surgeon explained this area is where the main nerve to the muscles of the whole extremity is present and also the main artery which furnishes nourishment runs in conjunction with this, and large veins are also present there. He stated that the presence of these structures are right in the middle of the place where it is necessary to make the incision, and requires a great deal of care in making the surgical cut or incision to get to the bone. He said the nerve was taken out of the way by putting a strip of soft tissue around it and pulling it out of the way and then retractors, which *71 are right-angle instruments, were applied to hold the flesh out of the way. During the proceeding the nerve twice had pressure put on it of a severe degree by a broad retractor but was not injured in any other way. After the operation was sutured a drain was left in as closure was done. A hip spica cast was applied, after which plaintiff made good recovery and was discharged from the hospital on February 18th. The suture and drains were removed on February 27th but the cast was left on until April 3, 1954.
When the cast was removed and Donald was allowed to bear weight on his foot on April 10th it was noticed that a nerve injury was present because he was unable to raise his right foot. The condition is called a “drop foot” and is accompanied by numbness and weakness all the way to the knee. As a result of this paralytic condition plaintiff was furnished with a brace which assists him in raising his foot. Plaintiff was still using his brace at the time of the trial.
Dr. Kingsley was of the opinion that it would require some six months or longer before he would be able to give any prognosis as to when, if ever, the nerve injury might heal. He considered the operation for osteomyelitis successful. Both Drs. Kingsley and Trax believed that there would be no recurrence of osteomyelitis. Dr. T. E. Banks, orthopedic surgeon of Alexandria, and Dr. Donald G. Carnahan, Jr., a graduate physician who specializes in radiology, testified after examination of the X-rays which were taken of plaintiff’s leg on January 19th and 24th, February 6th, 8th, 10th, 14th and 22nd of 1954, that in their opinion the X-rays did not justify a diagnosis of osteomyelitis. Neither of these doctors, however, saw plaintiff prior to the operation and both admitted that the surgeon who actually performed the operation was in a better position to determine the existence of osteomyelitis than could be accomplished solely through an examination of X-rays. Dr. Kittrell testified positively that in its early stages osteomyelitis cannot be determined from X-ray pictures alone. Drs. Trax, Kingsley and Kittrell all expressed opinions that in view of the history as given them by Donald D. Robertson, it is logical to conclude the osteomyelitis was caused from the bruise or knee injury sustained by Robertson in the collision on September 16, 1953. These opinions are questioned by Drs. Banks and Carnahan, who point out that there was an unusual lapse of time between September 16th and January 9th, when Robertson first consulted a doctor. However this may be, we believe that the medical testimony preponderates in favor of plaintiff. Furthermore, we think the lay testimony as indicated above, shows the constant presence of an injured knee during September, October, November, December and January and no other cause is even suggested to which the osteomyelitis can be logically traced. We are impelled to the opinion plaintiff’s osteomyelitis was a direct result of the bruised knee sustained hy Donald Robertson in the accident of September 16, 1953.
The medical evidence shows plaintiff has substantially recovered from the osteomyelitis, although there is testimony from one of the medical experts that such a prognosis is not always satisfactory. Plaintiff, however, is suffering from a very grave disability, the drop foot, for which no definite prognosis could be given at the time of the trial. It was indicated that perhaps after the lapse of six or eight months it could be determined whether or not disability of the foot would be permanent.
While it is frankly conceded by Dr. Kingsley that the drop foot was due to the pressure exerted by the retractor on the main nerve to the muscles, we are impressed with his explanation that the occurrence was one of the unavoidable complications which sometimes arise even from proper and careful medical treatment. The Workmen’s Compensation Act, LSA-R.S. 23:1021 et seq., has been repeatedly held as affording the employee protection in such instances. See Louisiana Workmen’s Com *72 pensation Law & Practice (Malone), pages 286-287, and authorities cited therein. The nerve injury must be considered as an incident to plaintiff’s compensable disability, and because of the indefinite prognosis plaintiff’s injury must be determined to be of a permanent nature.
In resolving the compensation award, the judge a quo determined that Robertson was employed by Dewey Amyx only on September 15th and September 16th, 1953, or a fractional part of two days, when the accident occurred about noon on September 16th. The employee’s wages were one-fourth of the gross receipts of the truck for which Dewey Amyx received 35‡ per mile. At the time Robertson was hauling the pit was eighteen to twenty miles away from the point of delivery. Robertson hauled but two loads the first day when his truck broke down and on the second day he had hauled two loads and was in the act of delivering a third load when the collision occurred. Predicated on the average of gravel trucks hauling on said job, the court determined that the average number of hauls per day should be three arid one-half. Thus, based on a five-day week, the court held plaintiff’s weekly compensation should be calculated at $27.87. We are of the opinion that the evidence justifies such a finding.
Our conclusion is that the evidence in the record confirms the holding of the trial court that plaintiff injured his knee on September 16, 1953, while acting in the course of and scope of his employment, and that osteomyelitis resulted from the accident which required surgery and at the time of trial plaintiff was totally and permanently disabled. We are also of the opinion that weekly compensation payments should be computed at the rate of $27.87. The evidence also justifies fully the payment of medical expenses to the extent of $1,000, which sum however, is not contested by the defendant. There is, therefore, no manifest error in the ruling of the court a quo. The judgment from which appealed should be and is hereby affirmed at appellant's costs.